IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG HENRY,<br><br>Plaintiff,<br><br>v.<br><br>HARRY E. WILSON, Superintendent; CAROL A. SCIRE, Grievance Coordinator; MR. REID, BA-Unit Manager; MS. CLEVELAND, BA-Unit Counselor; MARY ANN MISTRIK, Hearing Examiner; MS. KERRI CROSS, Hearing Examiner; LAUREZ R. HARRY, Program Review Committee; BRADLEY NEWTON, Program Review Committee; PSYCHIATRIST SAAVEDRA, Medical Psychiatrist; STEVE BENKO, Program Review Committee,<br><br>Defendants. | ) | Civil Action No. 05 - 648<br><br>Judge David S. Cercone<br>Magistrate Judge Lisa Pupo Lenihan |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the Motion for Summary Judgment filed by the Commonwealth Defendants (doc. no. 67) be granted and that the Motion for Summary Judgment filed by Dr. Saavedra (doc. no. 70) be granted.

**II. REPORT**

Plaintiff, an inmate incarcerated at the State Correctional Institution at Fayette, Pennsylvania, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. Named as the Defendants are the following individuals employed by the Pennsylvania Department of Corrections (DOC) at SCI-Fayette: Harry S. Wilson, Superintendent; Carol A.

Scire, Grievance Coordinator; Darrian Reid, Unit Manager; Gloria Cleveland, Unit Counselor (retired); Mary Ann Mistrik, Hearing Examiner; Kerri Cross, Hearing Examiner; Laurez Harry, Program Review Committee; Bradley Newton, Program Review Committee; Steve Benko, Program Review Committee; and Saavedra, Psychiatrist. Plaintiff claims that the Defendants have violated his rights as protected by the Eighth and Fourteenth Amendments of the United States Constitution by failing to approve him for single cell Z status.

A. Plaintiff's Allegations

Plaintiff's allegations assert that defendants violated his Due Process rights in their handling of misconducts and disciplinary hearings when he refused orders to double cell and violated his Eighth Amendment rights by failing to give him Z-code or single cell status. Specifically, Plaintiff alleges that he was involuntarily double celled at SCI- Pittsburgh and victimized by two inmates, Calhoun and Foggie, which caused him repeated sexual and emotional anguish.[1] When Plaintiff told staff, he was placed in an all single cell block by Lt. Clark.

In July of 2000, Plaintiff was transferred to SCI-Rockview and celled with inmate Burton. Even though not victimized by Burton, Plaintiff suffered the same symptoms he experienced while double celled years earlier at SCI-Pittsburgh, including nervous tension, emotional anguish, nausea, anxiety, headaches, insomnia, panic and not being able to function in his daily activities. Plaintiff was referred to psychology professionals and placed on psycho

1. During his TRO hearing, Plaintiff admitted that he never has been sexually assaulted by any of his cell mates (doc. no. 67-3, pp. 32-34, 90).

tropic medications in January of 2001. Plaintiff received several misconducts for refusing to double cell and received a demotional transfer back to SCI-Pittsburgh on June of 2001.

SCI-Pittsburgh closed and on December 11, 2003 Plaintiff was transferred to SCI-Fayette and double celled with inmate Mitchell. After experiencing the same symptoms mentioned above, he reported to defendant Cleveland, a unit counselor, his fear that being double celled with inmate Mitchell posed a threat to his mental health and safety. He asked Cleveland to have Z Code staffing issued to him explaining that he could have his prior psychological problems verified by documents in his prison file. He alleges that Cleveland said she would do so. A week later, he was placed in a single bed cell and directed to see the psychologist. On January 6, 2004, Plaintiff was seen by Psychologist Yanack who informed him that he was being reviewed. When he asked about Z Code status, he was told that BA-Staff had not contacted him about it. Henry saw Psychologist Fischer on May 26, 2004 and again asked if he had received Z Code status but was told that BA-Staff had not contacted her about it. He resubmitted a request to Fischer in August 2004 about the Z Code issue and claims that in a response dated August 13, 2004, Fischer informed him that she had contacted his Unit and recommended single celling for him because his adjustment deteriorated when he was double celled.

On October 21, 2004, Plaintiff submitted a request to defendant Reid requesting protective custody because of his fear that he would be double celled. On December 2, 2004, Reid informed Plaintiff that he did not have Z Code status, he would have to be double celled, and refusal to double cell would result in a misconduct. When Plaintiff asked to be placed in Protective Segregation, Reid sent him to the RHU and issued a misconduct no. 693509 for

refusing to obey an order. He received a disciplinary hearing on December 9, 2004, where he was refused witnesses and ordered to plea without allowing him to enter the statements from Reid's two versions. Plaintiff was found guilty and his appeals to the PRC and Superintendent Wilson were denied. On December 31, 2004, Plaintiff was charged with misconduct no. 436296 for refusing to obey an order. Plaintiff was found guilty but this charge was dismissed by Superintendent Wilson on appeal on January 21, 2005.

In January of 2005, Plaintiff was returned to general population and double celled with inmate Beck. At that time, he was seen by defendant Dr. Saavedra who prescribed a stronger dose of psycho tropic drugs and explained that Plaintiff would have to remain double celled. On January 14, 2005, Plaintiff received misconduct no. A69551 for threatening his cell partner's life. Defendant Cross held a disciplinary hearing, found him guilty and sentenced him to 30 days of punitive segregation.

On February 8, 2005, Dr. Saavadra evaluated Plaintiff and discontinued his psycho tropic medication. Upon release from the RHU on February 12, 2005, Plaintiff was double celled with inmate John Doe who became hostile when plaintiff told him about his prior psychological problems. That evening, Plaintiff was double celled with another inmate. The next day, Plaintiff asked to be placed in administrative segregation where he submitted further requests for Z Code to Dr. Saavedra. On March 14, 2005, Plaintiff was placed back in general population in a single cell. On April 1, 2005, he was double celled with inmate Jarrett on April 1, 2005. On April 14, 2005, Plaintiff saw Defendant Saavedra who prescribed psycho tropic drug therapy and psychotherapy treatment sessions but told Plaintiff he would not be removed from double-celling in spite of continued symptoms. He requested single cell status of

Defendant Newton, the Unit Manager at the time, and advised him of continued flashbacks, mental confusion and pacing the floor at night but Newton refused, which Plaintiff alleges reflects SCI-Fayette's policy for giving lower priority to inmates with serious psychological problems.

B. Standard of Review

Defendants have filed a Motion for Summary Judgment under Federal Rule of Civil Procedure 56. Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 587. The inquiry involves determining whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52). If a court, having

reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50. Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation, 477 U.S. at 322.

**C. Liability under 42 U.S.C. § 1983**

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). *Accord* Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by

alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207.

1. Eighth Amendment

In his Complaint, Plaintiff alleges violations of the Eighth Amendment. The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). In addition, the Cruel and Unusual Punishments Clause of the Eighth Amendment protects inmates against the application of excessive force by correctional officers. Whitley v. Albers, 475 U.S. 312, 318-19 (1986).

Every Eighth Amendment claim alleging cruel and unusual punishment embodies both an objective and a subjective component. First, the alleged deprivation must be objectively sufficiently serious. Second, the defendant prison official must have a sufficiently culpable state of mind. *See* Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective component relates to the "seriousness of the injury" and focuses on whether there has been a deprivation or infliction of pain serious enough to implicate constitutional concerns.

Plaintiff alleges that the conditions of his confinement of being required to double cell violates his rights under the Eighth Amendment. An inmate must show two elements in order to make out a prima facie case that a prison official's actions violated the Eighth

Amendment's prohibition against cruel and unusual punishment with respect to prison conditions. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The Supreme Court has explained that the first showing requires the court objectively to determine whether the deprivation of the basic human need was "sufficiently serious."

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."

Hudson v. McMillan, 503 U.S. 1, 9 (1992) (citations omitted).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Farmer, 511 U.S. at 834 (quotation omitted).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

Farmer, 511 U.S. at 838.

The Supreme Court specifically has held that double-celling is not prohibited by the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337 (1981). Plaintiff fails to produce

any evidence to demonstrate that the conditions of his confinement in a double cell with another inmate deprived him of any basic human need. Notwithstanding, he does assert that his confinement in a double cell violates his rights under the Eighth Amendment because of his psychological needs. *Cf*. Oden v. Wall, 69 F.3d 539 (Table), 1995 WL 632381, *2 (7 Cir. 1995) (noting that an inmate may have an Eighth Amendment right to a single cell if a serious medical need required it). However, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *See* Hudson, 503 U.S. at 9. To demonstrate an extreme deprivation, a prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions and that a substantial risk of serious harm results from the prisoner's unwilling exposure to the challenged conditions. Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997).

In the case at bar, Plaintiff received constant psychological treatment for his anxieties. Dr. Saavadra determined that Plaintiff’s medical needs did not require single cell status. In fact, the psychology department at the institution determined that Plaintiff did not exhibit any legitimate medical need for single cell status and found that he was “anti-social, untruthful and manipulative” (doc. no. 70-5, p. 16). His numerous mental health evaluations indicate that there are no significant health indicators that require Z Code status. DOC officials reasonably relied on these evaluations in refusing to grant him single cell status. There simply is nothing in the record that suggests that any Defendant knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. Nor is there any evidence that Defendants were following any custom or policy of failing to grant Z Code status based on psychological concerns.

With respect to claims for unconstitutional medical treatment, a defendant may exhibit deliberate indifference by intentionally denying or delaying access to medical care, or by intentionally interfering with the treatment once prescribed. Gamble, 429 U.S. at 105-106. However, an inadvertent failure to provide adequate medical care does not evidence deliberate indifference. *Id*. Furthermore, while an intentional refusal to provide any medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere. A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation; the right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice. Young v. Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state a claim for relief under section 1983); White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). Moreover, deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Gamble, 429 U.S. at 106. Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

Here, Plaintiff merely disagrees with the medical department's assessment of his psychological concerns. Such disagreement does not exhibit deliberate indifference. Nor is there any evidence that there is a substantial risk of serious harm that results from Plaintiff double celling. Plaintiff has not reported any sexual attacks or assaults by any of his numerous

cell mates such as would have put them on notice of a heightened need to protect him from injury. Thus, Plaintiff has not demonstrated that Defendants acted with deliberate indifference to his safety when they failed to approve Plaintiff's cell change request. To show deliberate indifference, the prison official need not believe or intend that the inmate will actually be harmed; rather, he is liable if he consciously ignores a known substantial risk to an inmate's safety. Farmer, 511 U.S. at 842. Here, there is no allegation that any Defendant was aware, or should have been aware, of any threat to Plaintiff's safety. Thus, Plaintiff has failed to show that any Defendant violated his Eighth Amendment rights with respect to his cell placement.

2. Fourteenth Amendment

Plaintiff also claims that Defendants violated his rights as protected by the Fourteenth Amendment, which prohibits the state from depriving an individual of a constitutionally protected interest without due process of law. To state a claim for relief, a plaintiff must set forth facts that demonstrate that he had a protected liberty interest that was impaired by the defendants actions. Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972).

Plaintiff first asserts liability against Defendants on the basis of the procedures employed during his disciplinary proceedings. Resolution of this claim is dictated by the United States Supreme Court's opinion in Sandin v. Conner, 515 U.S. 472 (1995). In Sandin, the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents

of prison life." Sandin, 515 U.S. at 483 (emphasis added). Applying this new test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence.

Employing the due process analysis announced in Sandin, the federal courts, including the United States Court of Appeals for the Third Circuit, have concluded that placement in restrictive confinement for periods of up to one year, and more, does not trigger a constitutionally protected liberty interest as it does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. *See* Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (it is not atypical to be exposed to conditions of administrative custody for periods as long as 15 months as such stays are within the expected parameters of an inmate's sentence).

In the case at bar, it appears that Plaintiff received substantially less than 15 months of disciplinary detention in the RHU as a result of his misconduct reports. Under the rule announced in Sandin, as applied by our circuit court in Griffin, this court must conclude that Plaintiff's disciplinary detention did not impose an atypical and significant hardship in relation to the ordinary incidents of his prison sentence sufficient to give rise to a protected liberty interest. As he did not have a liberty interest in being free from disciplinary confinement, there was no process due at his misconduct hearings. Consequently, there was no due process violation in denying him his requested witnesses[2]. Accordingly, Plaintiff has failed to state a

2. Even if he did have a due process right, such right does not grant Plaintiff an absolute right to call witnesses at his misconduct hearing. The right to call witnesses is subject to the need for "mutual accommodation between institutional needs and objectives and the provisions of the Constitution." (continued...)

claim upon which relief may be granted with respect to his misconduct hearing and the resultant disciplinary sanctions.

Plaintiff also claims that defendants violated his rights by denying him Z Code status. In support of this claim, Plaintiff alleges that DOC policy confers a liberty interest in receiving such status. In Hewitt v. Helms, 459 U.S. 460, 472 (1983), the Supreme Court held that a state regulation can create a liberty interest "through the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates." Under this analysis, it is clear that DOC has not conferred upon Pennsylvania inmates a liberty interest in single cell status. In this regard, DOC Policy 11.2.1, Reception and Classification Procedures Manual Section 5 - Single Celling ("Z" Code) and Double Celling Housing sets forth the procedures for granting single “Z code” status.[3] The policy provides specific criteria for which an inmate will be evaluated and considered for Z Code housing classification. In contrast to the regulation in Hewitt, DOC's Z Code status guidelines do not contain specific substantive predicates coupled with mandatory language. The guidelines merely state that an inmate will be evaluated and, if certain criteria are met, will be carefully considered for Z Code status. Significantly, the guidelines do not state that if an inmate has certain characteristics, he or she automatically will receive Z Code housing, merely that they will be considered. Therefore,

2.(...continued)
Ponte v. Real, 471 U.S. 491, 495 (1985). An "inmates' right to present witnesses is necessarily circumscribed by the penological need to provide swift discipline in individual cases." *Id*.

3. This policy supercedes DOC Policy Statement 6.5.3 Single Celling (Z Code) and Double Celling (2001) and DOC Policy Statement 6.5.14: Single Cell Housing "Z" Program Code (1995).

under the Hewitt "mandatory language" test, plaintiff has no protected liberty interest in receiving Z Code status. *Accord* Austin v. Chesney 1995 WL 498720, at *3 (E.D.Pa.1995) (holding that under Hewitt's "mandatory language" inquiry, DOC policy did not create any protected liberty interest in Z Code status).

Moreover, plaintiff cannot demonstrate that he has a protected liberty interest in Z Code status under the analysis set forth in Sandin v. Conner. Specifically, plaintiff has failed to show that the denial of Z Code status has resulted in an atypical and significant hardship in relation to the ordinary incidents of prison life. "[L]iving in a double-cell is an expected ordinary incident of prison life, [and] retaining single-cell status is not a protected liberty interest." Austin v. Chesney, 1995 WL 498720, at *3 (E. D. Pa. 1995). Thus, Plaintiff has no Fourteenth Amendment right to Z Code status.

## III. CONCLUSION

For the reasons stated above, it is respectfully recommended that the Motion for Summary Judgment filed by the Commonwealth Defendants (doc. no. 67) be granted and that the Motion for Summary Judgment filed by Dr. Saavedra (doc. no. 70) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Lisa Pupo Lenihan

U.S. Magistrate Judge

August 21, 2007

cc: David S. Cercone
United States District Judge

Craig Henry
AP-7447
SCI Fayette
Box 9999
LaBelle, PA 15450-0999

counsel of record